UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GAIL CARACCILO,

                                        Plaintiff,

                                                        DECISION AND ORDER

                                                        04-CV-6110L

                        v.

THE VILLAGE OF SENECA FALLS, NEW YORK,
THE BOARD OF TRUSTEES OF THE VILLAGE OF
    SENECA FALLS, NEW YORK,
ANTONIO CONSTANTINO, individually and/or
in his capacity as Mayor,
CARSON LANKFORD, individually and/or in his capacity as
Trustee,
LOUIS LORENZETTI, individually and/or in his capacity as
Trustee,
CHARLES P. BARBAY, III, individually and/or in his
capacity as Trustee; jointly and severally,

                                        Defendants.
_____

## INTRODUCTION

        Plaintiff, Gail Caraccilo, commenced this action against her former employer, the Village

of Seneca Falls, New York ("Village"), the Village Board of Trustees ("Board"), the Village

mayor, and the four individual Board members.  Plaintiff alleges that defendants violated her

constitutional rights in several respects in connection with the termination of her employment in

2002.

On January 14, 2005, the Court issued a Decision and Order (Dkt. #14) granting in part and denying in part defendants' pre-discovery motion for summary judgment.  The Court dismissed plaintiff's third and fourth causes of action, which asserted claims under 42 U.S.C. § 1985, but denied defendants' motion insofar as it sought to dismiss plaintiff's first and second causes of action, which respectively assert a Fourteenth Amendment due process claim and a First Amendment retaliation claim under 42 U.S.C. § 1983.  I found that there were factual issues regarding both of those claims, which could not be resolved on the undeveloped record then before me.

Discovery is now complete.  Defendants have renewed their summary judgment motion as to the two § 1983 claims, asserting that the undisputed evidence conclusively demonstrates that they are entitled to judgment as a matter of law, on a number of grounds.

## BACKGROUND

The facts concerning the events giving rise to this case were set forth in the Court's prior summary judgment decision, familiarity with which is presumed, and will not be repeated at length here.  In short, plaintiff was hired by the Village in 1989 as a planning assistant (also referred to as "planning clerk"), hereinafter "planning assistant," which was a permanent "competitive class" position under the New York Civil Service Law.  As such, the position carried with it certain due process protections, such as the right to a pretermination hearing.

In October 1999, the Board appointed plaintiff to serve for the remaining portion of a two-year term as deputy village clerk ("deputy clerk"), which had become vacant when the previous deputy clerk resigned in mid-term.  It does not appear to be disputed that as deputy clerk, plaintiff continued to perform some of the duties that she had performed as planning assistant, Dkt. #34-7 at 1, and that no one else was hired to fill the planning assistant position. Dkt. #32 at 4.

Although plaintiff received a pay increase with the new position, the deputy clerk position was not a competitive-class position, and therefore did not carry with it the same due process protections as the planning assistant position.  The parties do not dispute that upon the expiration of a deputy clerk's two-year term, there is no statutory right to continued employment in that position, unless the person holding it is reappointed to another term.

When plaintiff's first term as deputy clerk expired on April 1, 2000, the Board reappointed her to a second two-year term.  At the end of that second term, however, the Board did not reappoint plaintiff, nor was she reinstated to the planning assistant position.  Thus, plaintiff's employment with the Village came to an end as of April 1, 2002.  These actions form the bases for this lawsuit.

Plaintiff's due process claim is based on her contention that she retained due process rights in her position as planning assistant even after she became deputy clerk.  According to plaintiff, she effectively served simultaneously as both planning assistant and deputy clerk, and when her term as deputy clerk expired, she should have been returned to her position as planning

assistant.  Plaintiff further contends that she was entitled to prior notice and a hearing before her employment in that position was terminated.

Plaintiff's retaliation claim is based on her allegation that defendants' decision not to reappoint her as deputy clerk was made in retaliation for plaintiff's exercise of her First Amendment rights in speaking out about certain matters of public concern.  Those matters included certain practices of the mayor and the Board that plaintiff believed exceeded their authority under, or were contrary to, New York law.

Defendants contend that plaintiff did not retain any rights in connection with her planning assistant position after she became deputy clerk.  They contend that the planning assistant position was simply eliminated at that time, and that there was thus no planning assistant position for plaintiff to return to when her term as deputy clerk ended.

Defendants also argue that plaintiff's due process claim fails as a matter of law because plaintiff did not avail herself of all that process that was available to her.  Specifically, defendants argue that plaintiff could have challenged her termination by filing a petition under Article 78 of the New York Civil Practice Laws and Rules, or by filing a grievance under the controlling  collective bargaining agreement, but that she did neither.

With respect to plaintiff's First Amendment claim, defendants contend that most of plaintiff's speech at issue was not protected under the First Amendment because it was made pursuant to plaintiff's job duties.  In support of that argument, defendants principally rely upon the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), in which the

Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."

To the extent that plaintiff alleges that she spoke outside the context of her job, as a private citizen (such as statements she made in connection with her participation in a local group, "Concerned Citizens for Good Government"), defendants contend that there is no evidence that they were even aware that plaintiff had engaged in that speech, and that there is thus no evidence that plaintiff's speech could have been a motivating factor in defendants' decision not to continue her employment with the Village.

## DISCUSSION

### I. Due Process Claim

### A. General Principles

To prevail on a procedural due process claim, plaintiff first must identify a property or liberty interest that is entitled to due process protection. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985). "Property interests protected by due process … are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Martz v. Village of Valley Stream*, 22 F.3d 26, 29 (2d

Cir. 1994) (internal quotes omitted); *see also Flood v. County of Suffolk*, 820 F. Supp. 709, 712

(E.D.N.Y. 1993) (state law determines whether there is a property interest in employment).

With respect to due process claims arising out of a termination from public employment,

the Court of Appeals for the Second Circuit has explained that

> [t]he Fourteenth Amendment prohibits the discharge of a public employee with a property
> interest in continued employment in the absence of a pre-termination hearing.  This
> circuit looks to New York Civil Service Law and the statutes which create a particular
> position or the authority to appoint or remove an individual to or from the position to
> determine whether a New York public employee has a property interest in his position
> requiring that he be afforded a hearing before termination.

*Catone v. Spielmann*, 149 F.3d 156, 160 (2d Cir. 1998) (quotation marks and citations omitted).

The Court of Appeals has also made clear that a public employee's subjective expectation

of continued employment, if unsupported by state law or an understanding among the parties, is

insufficient to give rise to a protected property interest:  "To state a deprivation of property claim

under the Fifth and Fourteenth Amendments, a plaintiff 'must have more than a unilateral

expectation ... .  He must, instead, have a legitimate claim of entitlement ... ."  *McPherson v. New

York City Dep't of Educ.*, 457 F.3d 211, 216 (2006) (quoting *Board of Regents v. Roth*, 408 U.S.

564, 577 (1972)).  *See also Preddice v. Callanan*, 92 A.D.2d 1040, 1041 (3d Dep't 1983) ("In

our view, petitioner's allegations demonstrate a mere unilateral expectation of continued

employment insufficient to trigger a due process guarantee to a pretermination hearing").

As the party asserting due process rights, plaintiff bears the burden of establishing that

she had a legitimate property interest in her employment.  *Crull v. Sunderman*, 384 F.2d 453, 465

(7th Cir. 2004); *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 578 (10th Cir. 1996); *see*

*also Voorhis v. Warwick Valley Central School Dist.*, 92 A.D.2d 571, 571 (2d Dep't 1981) ("To establish a constitutionally protected property interest in a public employment position, a person must show more than a mere unilateral expectation of such an interest.  He must establish a legitimate claim of entitlement to such position").

### B. Whether Plaintiff Retained a Property Interest in the Planning Assistant Position

The central issue regarding plaintiff's due process claim in the case at bar is whether she retained any interest in her planning assistant position after she was appointed deputy clerk. Defendants do not dispute that the position of planning assistant does give rise to a property interest with respect to the person holding that position; they simply argue that plaintiff voluntarily gave up that position and any due process rights associated with it.  *See* N.Y. Civ. Serv. L. § 75(1) (competitive-class employee may be discharged only "for incompetency or misconduct shown after a hearing upon stated charges"); *Ciambriello v. County of Nassau*, 292 F.3d 307, 314 (2d Cir. 2002) (§ 75 "'gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing'") (quoting *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994)).

Defendants contend that once plaintiff became deputy clerk, she ceased to be planning assistant and lost whatever interest she may have had in that position.[1]  Viewing the evidence in

---

[1]Plaintiff does not appear to contend, and there is nothing in the record to support the view that plaintiff had a protectible property interest in the deputy clerk position when her term of employment in that position ended in 2002.

the light most favorable to plaintiff, however, and drawing all reasonable inferences in her favor, as I must on this motion, *see Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823 (2003), I conclude that there are genuine issues of material fact in this regard, which preclude the entry of summary judgment.

It is not clear whether the parties had a mutual understanding concerning whether plaintiff's acceptance of the deputy clerk position would necessarily mean her relinquishing any interest in, or rights associated with, the planning assistant position. It does not appear that the parties ever spelled out, in writing or otherwise, exactly what their intentions or expectations were in this regard.

When asked at her deposition whether anyone on the Board had told her anything about her "rights or ... status [as] to the planning clerk position" when she was offered the deputy clerkship, plaintiff replied that Brad Jones, the then-mayor, told her that she "would continue to work as [she] had been." Dkt. #29-6 at 10. She testified that she believed that statement to have been made in reference to both her job duties and her job title, but that Jones had not stated whether he was referring to her duties, title, or both. *Id.*

Plaintiff also testified that she had been told by Janet Enos, who was the village clerk until sometime in May 2000, that when plaintiff took the deputy clerk job, "the duties of the planning clerk would be folded into the duties of the deputy clerk[,]" which plaintiff took to mean that she "would have additional duties in addition to the ones that [she] already had" as planning assistant. *Id.* She stated that Enos had not "give[n her] any indication as to what would

become of [plaintiff's] prior job, or the job title of planning clerk[.]"  *Id.* at 11.  Plaintiff also stated that no one else within the Village administration gave her any indication what would happen to the title of planning clerk" after she became deputy clerk.  *Id.*

The minutes of the October 18, 1999 Board meeting at which plaintiff's appointment as deputy clerk was approved say nothing about the planning assistant position.  The minutes state only that a motion made by the mayor "to appoint Gail M. Caraccilo, to the position of Deputy Village Clerk of the Village of Seneca Falls, to fill the unexpired portion of a two-year term" was unanimously approved by the Board.  Dkt. #34-4 at 2.

Defendant Antonio Constantino, who was a Board member at the time of that meeting, and who was elected mayor in 2000 (Dkt. #29-8 at 3), states in an affidavit that a "packet of information ... was distributed to the Trustees at the October 18, 1999 meeting, prior to the vote on the appointment of the Plaintiff to the Deputy Clerk position."  Dkt. #34-3 ¶ 3.  Among the materials contained in that packet was an undated memorandum, by an unknown author stating that "[w]ith the resignation of the person who formerly held the titles of ... Deputy Village Clerk [and two other titles] a vacancy resulted."  Dkt. #34-4 at 5.  The memo states, "We have determined that a reconfiguration of these duties would serve the public better by improving customer service and controlling costs," and that [w]e have decided to eliminate the titles of Planning Assistant and Sewer Billing Account Clerk.  ... The revised duties of the Deputy Village Clerk include the responsibilities of the Planning Assistant while also expanding into other areas such as grant writing, and writing of press releases and speeches."  *Id.*

An attachment to that memo summarizing the proposed reconfiguration stated that the proposal would "[e]liminate the 'Clerk' position that the Planning Assistant (Gail) now holds and replace [it] with a non-union, exempt title of Deputy Village Clerk." *Id.* at 8. According to defendants, some of these decisions concerning the revised duties of the deputy clerk and the elimination of the planning assistant position were read into the record at the meeting. *Id.* at 10.

At his deposition, Constantino testified that it was his recollection that when plaintiff accepted the deputy clerk position, she "agree[d] she would give up her union rights, civil service rights. She'll give up her rights to become deputy clerk and for more money." Dkt. #26-8 at 14-15. He also testified that at that time, the planning assistant job was "abolished." Dkt. #29-8 at 13.

When asked whether, at the Board meeting at which these changes were approved, the changes were explained to plaintiff, Constantino responded, "Right." *Id.* at 14. He also testified, however, that these events occurred in "February '99." *Id.* at 11. As stated, the undisputed evidence indicates that these changes were approved at a Board meeting in *October* 1999. Even aside from that one apparent lapse of memory, the Court could not simply accept the truth of Constantino's assertions in this regard, but this points up the fact that resolution of the relevant issues may turn to a great extent on the credibility of the parties, whose accounts of the pertinent events–particularly what plaintiff was told about the planning assistant position–are in sharp dispute.

There is other evidence supporting plaintiff's position, which need be recited only briefly

here. For example, former Board member Phillip Dressing, who was also at the October 18,

1999 meeting, *see* Dkt. #34-4 at 2, testified at his deposition that he did not recall *any* discussion

among the Board members concerning what plaintiff's rights, if any, would be if she were not

reappointed to the deputy clerk position when her term expired. Dkt. #29-10 at 7.

Plaintiff also notes that in March 2002, near the end of her second term as deputy clerk,

then-Village Administrator Lyn Bove recommended in an internal memorandum to the mayor

and the Board that the duties of the deputy clerk be reassigned to the Village treasurer, and that

"[t]he present Deputy Clerk [*i.e.*, plaintiff] ... continue to perform her duties as she does

currently, namely clerk duties for the Planning Department ... ." Dkt. #29-10 at 15.[2] Arguably, at

least, that supports the inference that plaintiff was continuing to serve as planning clerk even

after she became deputy clerk.

In addition, former Board members Dressing and Diana Smith testified at their

depositions that they were not aware of any resolution or other action abolishing the planning

---

[2]That proposal (which was ostensibly intended to produce a cost savings to the Village) was obviously not adopted. In a March 28, 2002 response to Bove's memo, two Board members, Dressing and Diana Smith, stated that "[t]he person currently in the position [of deputy clerk, *i.e.*, plaintiff] is very competent," but that the Board (which was apparently divided over whether plaintiff's deputy clerkship should be renewed) had placed certain "impediments" in plaintiff's path making it "impossible" for plaintiff to to carry out her duties effectively. Apparently referring to a state court proceeding that plaintiff had commenced against the Village, Dressing and Smith stated that the Board's actions had "resulted in a harassment lawsuit currently in process against the village" (*see* Dkt. #34 Ex. H), and that Bove's suggestions, if adopted, could "be interpreted as additional actions of harassment against the current deputy clerk." Dkt. #29-10 at 18. They recommended that "the position of Deputy Village Clerk and its incumbent should remain unchanged." *Id.*

assistant position, which tends to undercut defendants' assertion that the Village "eliminate[d]" the planning assistant position when plaintiff was made deputy clerk.  Dkt. #29-9 at 30; Dkt. #29-10 at 6.  Plaintiff also cites evidence that as deputy clerk, her pay was drawn from both the planning office budget and the clerk's office budget, which suggests that she may have continued to be considered a planning assistant, even after that position was supposedly "eliminated."  Dkt. #29-9 at 28.[3]

Certainly not all of the evidence supports plaintiff's position.  There is evidence, for example, that plaintiff understood when she took the deputy clerk position that she was no longer a public employee covered by a collective bargaining agreement, but a public officer who was prohibited from union membership, and that she ceased paying union dues upon becoming deputy clerk.  Dkt. #29-6 at 6.  As stated, Constantino also testified that plaintiff was at the meeting in 1999 when plaintiff was appointed deputy clerk, that it was made clear to her at that time that the planning assistant position was being abolished, and that she expressly agreed to

---

[3]Plaintiff also testified that after her employment with the Village was terminated, the Village advertised for someone to perform the duties that she had previously performed as planning clerk.  Plaintiff testified that she submitted an application for the position but received no response.  Dkt. #29-6 at 41-42.  Defendant Louis Lorenzetti testified, however, that the job as was advertised as a part-time position and "would not be a civil service job."  Dkt. #29-9 at 14.  He stated that the job was never filled.  *Id.*  Plaintiff has submitted evidence that the Village relied on a "temp" agency to fill the duties associated with this position.  Dkt. #29-11.

Competing inferences could arguably be drawn from this evidence:  either that there was a need for an assistant planner after plaintiff's employment with the Village ended, or that the assistant planner *position* that had been held by plaintiff no longer existed, even if some of the *duties* of that position still needed to be performed.  Again, it is not the Court's role to choose between those competing inferences on this motion.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1014 (2d Cir. 1996).

give up her rights in that position in return for a higher salary.  And there appears to be no evidence that the mayor or any Board members told plaintiff that she *could* return to her planning assistant job if she was not renewed as deputy clerk.

It is not for the Court, however, to weigh this competing evidence on a motion for summary judgment.  *Phaneuf v. Fraikin*, 448 F.3d 591, 595 (2d Cir. 2006) ("The Court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments") (quoting *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)).  That is particularly so here, where defendants allege in effect that plaintiff waived her due process rights by accepting the deputy clerk position, since such waivers are not lightly to be inferred.  *See Mooney v. City of New York*, 219 F.3d 123, 131 (2d Cir. 2000) (stating with respect to "the well-established principles of waiver," that "the conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred") (quoting *Tray-Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993)).  The Second Circuit has cautioned that a waiver should only be inferred where the evidence shows that "the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them."  *Mooney*, 219 F.3d at 131.  "Moreover, the party asserting an implied waiver as a matter of law carries the burden of proving that these requirements have been met."  *Id.*; *see also NLRB v. New York Tel. Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991) (party asserting waiver "bears the

weighty burden of establishing that a 'clear and unmistakable' waiver has occurred") (quoting

*Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)).[4]

## C. Whether Plaintiff Could Hold Both Positions Simultaneously

At the Court's direction, both sides have also submitted post-argument supplemental

briefs addressing the issue of whether plaintiff could simultaneously hold the positions of

planning assistant and deputy clerk.  Not surprisingly, they differ on that score too.

Defendants, contending that plaintiff could not hold both positions, rely on the

"incompatibility of office" doctrine under New York law, which holds that, in general, a public

employee may hold two public positions unless (1) doing so is barred by a constitutional or

statutory provision or (2) the positions are incompatible at common law.  *See Smith v. Dillon*,

267 A.D. 39, 43 (3d Dep't 1943); *Held v. Hall*, 191 Misc.2d 427, 430 (Sup. Ct. Westchester Co.

---

[4]I recognize that "mutual understandings ... c[an]not create a property interest ... when they are contrary to the express provisions of regulations and statutes," *Baden v. Koch*, 638 F.2d 486, 492 (2d Cir. 1980).  Thus, even if plaintiff had been led to believe that she had some protectible interest in the *deputy clerk* position, that alone would not necessarily have given rise to such an interest.  *See, e.g.*, *Hawkins v. Steingut*, 829 F.2d 317, 322 (2d Cir. 1987) (even if workers' compensation board customarily reappointed its referees, and even if board chairman had assured plaintiff that plaintiff would be reappointed, no cognizable property right in referee position was created where controlling state law provided for a fixed term of employment and deemed the position to be vacant once that term expired).  The issue here, however, is whether plaintiff lost all her rights in the *planning assistant* position when she became deputy clerk.  The parties' intentions and mutual understandings (if any) in that regard are relevant to that question. *See Crull v. Sunderman*, 384 F.3d 453, 464 (7th Cir. 2004) (property interest may be created by "mutually explicit understandings").

2002).[5]  Plaintiff contends that the doctrine is inapplicable here because this case does not involve two "offices" and because the planning assistant and deputy clerk positions are not incompatible.

After considering the matter, I conclude that the incompatibility of office doctrine did not bar plaintiff from serving in both positions here.  First, defendants' reliance on New York Village Law § 3-300(4) is misplaced.  That statute provides that "[e]xcept as is otherwise provided by law, no person shall be disqualified from holding a village office by reason of holding any public office unless such public officer could not fully discharge the duties and obligations of the village office while carrying out the duties and obligations of any such other office."

By its terms, though, § 3-300(4) only applies to the holding of more than one "office."  There is a distinction, however, between a public *officer* and a public *employee*.  *See*, *e.g.*, *Dawson v. Knox*, 231 A.D. 490, 492 (3d Dep't 1931) ("all those who are in the public employment are not public officials and do not hold public office"), *aff'd* 267 N.Y. 565 (1935); *Ring v. Rodriguez*, 141 Misc.2d 164, 167 (Supt. Ct. Albany Co. 1988).  A "public officer" has been described as "an independent officer whose position is created, and whose powers and duties are prescribed, by statute and who exercises a high degree of initiative and independent judgment."  *O'Day v. Yeager*, 308 N.Y. 580, 586 (1955).  The creation and filing of the position must be mandatory.  *In re Lake v. Binghamton Housing Auth.*, 130 A.D.2d 913, 914 (3d Dep't

---

[5]The doctrine is one of long standing in New York; *see People ex rel. Ryan v. Green*, 46 How. Pr. 169 (Ct. Common Pleas 1873) (describing the principle that no person can hold incompatible offices as "an old and well settled one").

1987).  In addition, "[t]he duties of a public official involve some exercise of sovereign

power–those of a public employee do not.  The one has independent official status; the other has

rights under a contract of employment."  *Dawson*, 231 A.D.2d at 492.

There appears to be no dispute here that a deputy village clerk is a public officer.  *See*

N.Y. Vill. L. § 3-301(2)(c) (referring to the "office[] of deputy clerk").  I do not believe,

however, that a village planning assistant is a public officer, and indeed defendants do not appear

to argue otherwise.  *See* Defendants'  Supplemental Mem. of Law (Dkt. #34-7) at 7 (stating that

"[u]nlike a Planning Assistant Clerk, a Deputy Village Clerk is a public officer").  Thus, § 3-

300(4) simply has  no application here.

Defendants also note that § 3-301(2), which lists certain officers that a village may have,

provides at subsection (c) that a village may have "such other officers, including deputies, as the

board of trustees shall determine, provided, however, that the board of trustees by resolution or

local law may consolidate the offices of deputy clerk, and deputy treasurer."  Defendants argue

that one could draw from this the negative inference that the office of deputy clerk may *only* be

consolidated with that of deputy treasurer, and not with any other position, meaning that plaintiff

could not serve both as deputy clerk and planning assistant.

That argument is unpersuasive.  First, as stated, the position of planning assistant is not a

public office, so § 3-301(2)(c) simply does not speak to whether a person could serve

simultaneously as deputy clerk and planning assistant.  Second, "[a]s [the Supreme Court] ha[s]

held repeatedly, the canon *expressio unius est exclusio alterius* does not apply to every statutory

listing or grouping; it has force only when the items expressed are members of an 'associated

group or series,' justifying the inference that items not mentioned were excluded by deliberate

choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (quoting

*United States v. Vonn*, 535 U.S. 55, 65 (2002)).  The positions of deputy clerk and planning

assistant are not so closely related that one would expect them to be listed together, justifying the

inference that the latter term was deliberately excluded.  *See id.* ("The canon depends on

identifying a series of two or more terms or things that should be understood to go hand in hand,

which [is] abridged in circumstances supporting a sensible inference that the term left out must

have been meant to be excluded") (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81

(2002)).[6]

I am equally unpersuaded by defendants' argument that the deputy clerk and planning

assistant positions are incompatible with each other.  Defendants base that argument mostly on

their assertion that deputy clerks are prohibited by statute from union membership, whereas

plaintiff, while she served as planning assistant, was a dues-paying union member who had to

give up her union membership when she accepted the deputy clerk position.

In support of that argument, defendants cite N.Y. Civ. Serv. L. § 214, which provides that

"[n]o managerial or confidential employee, as determined pursuant to subdivision seven of

---

[6]Defendants actually cite § 3-301(2)(c) in response to plaintiff's own citation of that statute.  Plaintiff argues that the statute makes clear that the planning assistant position could not lawfully be absorbed into that of deputy clerk, and that plaintiff must therefore have held both positions separately, but simultaneously.  For the reasons stated, however, I find that § 3-301(2)(c) simply has no application to that issue.

section two hundred one of this article, shall hold office in or be a member of any employee

organization which is or seeks to become pursuant to this article the certified or recognized

representative of the public employees employed by the public employer of such managerial or

confidential employee."  Section 201(7) in turn provides that

> [t]he term "public employee" ... shall not include for the purposes of any provision of this
> article ... persons who may reasonably be designated from time to time as managerial or
> confidential upon application of the public employer to the appropriate board ... .
> Employees may be designated as managerial only if they are persons (I) who formulate
> policy or (ii) who may reasonably be required on behalf of the public employer to assist
> directly in the preparation for and conduct of collective negotiations or to have a major
> role in the administration of agreements or in personnel administration provided that such
> role is not of a routine or clerical nature and requires the exercise of independent
> judgment.  Employees may be designated as confidential only if they are persons who
> assist and act in a confidential capacity to managerial employees described in clause (ii).

There is no evidence here that the position of deputy clerk was ever designated as managerial or

confidential pursuant to this statute.  In addition, § 201(7) provides that certain persons (such as

assistant district attorneys and certain members of police and fire departments) shall be

designated as managerial or confidential.  Deputy village clerks are not listed among those

persons.  The fact that plaintiff may have voluntarily ceased paying union dues in the apparent

belief that this was a condition of her acceptance of the deputy clerk position is not dispositive.

Furthermore, I see nothing in the respective duties of deputy clerk and planning assistant that

would render those positions mutually incompatible.

**D. Failure to Use Available Avenues of Relief**

Defendants contend that, even if plaintiff did have a property interest in her planning assistant position even after she became deputy clerk, her due process claim should be dismissed because plaintiff failed to utilize avenues of relief that were available to her. Specifically, defendants contend that plaintiff could have filed an Article 78 petition in state court if she believed she had been unlawfully terminated. Defendants also state that if plaintiff truly believed that she never completely gave up her planning assistant position–which was covered by a collective bargaining agreement–she could have filed a grievance under that agreement. In support of this argument, defendants cite Second Circuit case law to the effect that "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000)), *cert. denied*, 534 U.S. 1128 (2002).

In applying that rule, however, the Court of Appeals has noted the distinction that the Supreme Court has drawn "between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)) (internal quote omitted). Explaining the significance of that distinction, the Second Circuit has stated:

> When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. In contrast, when the deprivation is pursuant to an established state procedure,

the state can predict when it will occur and is in the position to provide a pre-deprivation hearing.  Under those circumstances, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process."

*Rivera-Powell*, 470 F.3d at 465 (quoting *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996), *cert. denied*, 521 U.S. 1140 (1997)) (additional citations omitted).  *See also Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001) (explaining that the rationale for this rule is that, where "the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation").

In the case at bar, I find as a matter of law that defendants' actions with respect to the termination of plaintiff's employment cannot be characterized as "random and unauthorized," because they were taken by high-ranking Village officials with final authority over the decisionmaking process.  The alleged availability of a post-deprivation remedy therefore does not defeat plaintiff's claim.  *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 115 (2d Cir. 2006) (actions of chairman of town's governing body in ordering seizure of plaintiff's property "cannot be termed random or unauthorized; his actions with respect to [plaintiff] were the actions of the Town itself," and therefore predeprivation hearing was required) (internal quote omitted); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.  2003) ("the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters'") (quoting *Burtnieks v. City of New York*, 716 F.2d  982, 988 (2d Cir. 1983)),

- 20 -

*cert. denied*, 541 U.S. 988 (2004); *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204 (2d Cir. 1987) ("the action of a high-ranking official body, such as the Town Board, which has 'final authority over the decision-making process' [with respect to setting sewage disposal rates] cannot be considered random and unauthorized"); *Verri v. Nanna*, 20 F.Supp.2d 616, 621 (S.D.N.Y. 1998) ("the actions of high-level Village employees, particularly when taken in concert, may be considered established state procedure in and of themselves").

## II. First Amendment Retaliation Claim

### A. Analytical Framework

In addition to her due process claim, plaintiff alleges that defendants' decision not to reappoint her as deputy clerk was motivated by retaliation for plaintiff's having spoken out about matters of public concern.  She claims that such acts violated her First Amendment rights.[7]

In general, a plaintiff asserting a First Amendment retaliation claim must show (1) that she engaged in constitutionally protected speech or conduct, (2) that defendants took an adverse employment action against her, and (3) that there was a causal connection between the protected activity and the adverse action.  *Richardson v. Commission on Human Rights & Opportunities*, ___ F.3d ___, 2008 WL 2630055, at *6 (2d Cir. 2008); *Cotarelo v. Village of Sleepy Hollow*

_____

[7]I note that this claim is not dependent upon plaintiff's due process claim, since "[p]ublic employees can *never* be fired in violation of their First Amendment rights."  *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 111 n. 5 (1st Cir. 2003) (adding that "the fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment ... does not defeat a First Amendment claim") (citation omitted).

*Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006); *Sheppard v. Beerman*, 317 F.3d 351, 355 (2d

Cir.), *cert. denied*, 540 U.S. 822 (2003).  "If a plaintiff makes a sufficient showing of each of

these elements, summary judgment is not appropriate unless the defendant establishes as a matter

of law that he would have taken the same adverse employment action even absent the protected

conduct."  *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007).

Because this case involves a public employee, however, the analysis is somewhat

different from cases involving ordinary private citizens.  In particular, this case is governed by

the rule set forth by the Supreme Court in *Garcetti* that "when public employees make statements

pursuant to their official duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer

discipline."  547 U.S. at 421.

Under *Garcetti*, a court faced with the question of whether a public employee's speech is

protected must first ask whether the employee spoke as a citizen on a matter of public concern.

If the answer is "no," then no First Amendment claim arises, and that ends the matter.  If the

answer is "yes," then "the possibility of a First Amendment claim arises.  The question becomes

whether the relevant government entity had an adequate justification for treating the employee

differently from any other member of the general public."  *Garcetti*, 547 U.S. at 418.

With respect to whether the employee spoke "as a citizen," the court may consider a

number of factors, no one of which is necessarily dispositive, including:  the plaintiff's job

description; the person or persons to whom the plaintiff's speech was directed; and whether the

speech resulted from special knowledge gained through the plaintiff's employment.  *Gentilello v. Rege*, No. 3:07-CV-1564, 2008 WL 2627687, at *3 (N.D.Tex. June 30, 2008) (citing *Davis v. McKinney*, 518 F.3d 304, 312-14 (5th Cir. 2008)).  The inquiry into whether speech was made pursuant to the employee's official duties "is a practical one," since "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."  *Garcetti*, 547 U.S. at 424-25.

To determine the related issue of whether the plaintiff's speech addressed a matter of public concern, the court should look to "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006).  Whether speech relates to a matter of public concern is "a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."  *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.), *cert. denied*, 528 U.S. 823 (1999)).

If the plaintiff did speak as a citizen about a matter of public concern, then the relevant question becomes whether the governmental employer was justified in treating the plaintiff employee differently from any other citizen.  *Garcetti*, 547 U.S. at 418.  "Recognizing that government employers (like private employers) 'have heightened interests in controlling speech made by an employee in his or her professional capacity,' the Supreme Court ruled [in *Garcetti*]

that a public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes, and employer retaliation for such speech does not justify the 'displacement of managerial discretion by judicial supervision.'" *Ruotolo*, 514 F.3d at 189 (quoting *Garcetti*, 547 U.S. at 422-23).

Whether the employee could legitimately be treated differently from other members of the general public should be decided by applying the balancing test set forth by the Supreme Court in *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). *See Garcetti*, 547 U.S. at 418 (citing *Pickering*); *Reilly v. City of Atlantic City*, 532 F.3d 216, 228 (3d Cir. 2008). Put simply, the question to be decided under the *Pickering* balancing test is whether "the employee's interest in free speech is outweighed by the employer's interest in avoiding disruption." *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006); *see also Melzer v. Board of Educ. of City School Dist. of City of New York*, 336 F.3d 185, 193 (2d Cir. 2003) (stating that the issue is whether, "despite First Amendment rights[,] the employee's speech so threatens the government's effective operation that discipline of the employee is justified"), *cert. denied*, 540 U.S. 1183 (2004). It is the employer's "burden to show that the employee's activity is disruptive to the internal operations of the governmental unit in question." *Melzer*, 336 F.3d at 197.

If these two criteria are met–*i.e.*, the employee engaged in protected speech, and the employee's interest in the speech outweighs that of the governmental employer in avoiding unnecessary disruption–then the plaintiff must show that the protected speech was a motivating factor in the adverse employment decision. *Ruotolo*, 514 F.3d at 188.

If the plaintiff succeeds in doing so, the employer can rebut that showing by demonstrating that it would have taken the same action regardless of the protected speech. *Reuland*, 460 F.3d at 415; *see also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The first two issues–whether the employee's speech involved a matter of public concern and whether the governmental employer's interest in avoiding disruption outweighs the employee's interests in speaking out–are to be decided by the court as a matter of law. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 n. 8 (1st Cir. 2008); *Baldassare v. State of New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001); *Locurto*, 264 F.3d at 166. Whether the protected speech was a substantial or motivating factor in the alleged retaliatory action, and whether the employer would have reached the same decision in any event present issues of fact for the jury. *Baldassare*, 250 F.3d at 195.

"[E]ven if the government prevails in the *Pickering* balance, 'the employee may still carry the day if he can show that the employer's motivation for the discipline was retaliation for the speech itself, rather than for any resulting disruption.'" *Reuland*, 460 F.3d at 415 (quoting *Melzer*, 336 F.3d at 193. *See also Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir. 1996) ("even if the potential disruption to the office outweighs the value of the speech, the employer may fire the employee only *because of* the potential disruption, and *not because of* the speech").

In addition, although some aspects of the *Pickering* balancing test involve issues of law to be decided by the court, that does not mean that all such issues can or should be decided on a motion for summary judgment. Where the underlying facts are disputed, it may not be possible

for the court to determine the legal issues until those factual disputes are resolved.  *See*, *e.g.*, *Reuland*, 460 F.3d at 419 ("The jury should have resolved whether [the employer] was in fact motivated by a desire to avoid disruption, rather than retaliation, and whether his concern about disruption was reasonable"); *Johnson v. Ganim*, 342 F.3d 105, 114-15 (2d Cir. 2003) (factual disputes pertaining to the potential for disruption caused by plaintiff's speech, and defendants' motivations in suspending and terminating plaintiff, precluded summary judgment on plaintiff's First Amendment claim); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 558 (2d Cir. 2001) ("because essential factual issues remain unresolved, we are unable to decide as a matter of law whether defendants' interests outweigh plaintiffs' interests"); *Caruso v. Massapequa Union Free School Dist.*, 478 F.Supp.2d 377, 383 (E.D.N.Y. 2007) ("Issues as to whether a defendant is motivated by a desire to avoid disruption in the workplace or [by] retaliation and whether concerns about disruption are reasonable present questions of fact for a jury").


**B. Protected Speech Alleged in the Complaint**

Plaintiff alleges that defendants did not reappoint her as deputy clerk in retaliation for plaintiff's exercise of her First Amendment rights.  Specifically, plaintiff alleges in the complaint that she engaged in protected speech by "challenging the legality of defendants' conduct, both within the Village government and to individuals and entities outside of the Village government ... ."  Complaint ¶ 114.

The complaint identifies several instances of alleged protected speech as a basis for this claim. Plaintiff alleges, for instance, that "[o]n August 2, 2000, plaintiff was quoted in the Finger Lakes Times as confirming Mayor [Antonio] Constantino's intention to restrict public comment at Board meetings." Complaint ¶ 33. She alleges that Mayor Constantino's wife "was upset over [that] statement ... ." *Id.* ¶ 35.

Plaintiff also alleges that beginning in late 2000, Village officials began denying her access to the Village's post office box, and that in January 2001, she "informed [Village Administrator Peter M.] Milanesi and Trustee [Charles P.] Barbay that she did not believe the Mayor had authority to block her from access to Village records or mail." *Id.* ¶ 54. Plaintiff alleges that she told them "that if legal action was necessary to make the Board understand this, plaintiff was prepared to file suit." *Id.* Milanesi allegedly responded by "scream[ing] at plaintiff 'Bring it on!  I am tired of you, so bring it on!" *Id.* ¶ 55.

Plaintiff alleges that in early 2001, she contacted several individuals, including Gail Fischer of the New York State Archives and Records Administration, Donna Gilaberto of the New York Conference of Mayors and Municipal Officials, Robert Freeman of the New York State Committee on Open Government, and the counsel's office of the New York Department of State, "regarding her concerns about actions taken by Board members and staff to block her access to records and mail." *Id.* ¶¶ 59-62. She alleges that they all confirmed to her that defendants' actions exceeded their authority under New York law. *Id.* ¶ 63.

The complaint further alleges that in early 2001, plaintiff and then-Board member Dressing met with Carol Frances, an auditor with the New York State Comptroller's Office, who was conducting an investigation into the operations and finances of the Village.  The meeting took place in a meeting room in the Village offices.  *Id.* ¶ 65.  Plaintiff alleges that she and Dressing raised a number of concerns at this meeting, including:  plaintiff's inability to access Village records and to fully perform her duties as deputy clerk; the mayor's and other Board members' exclusion of Dressing from discussions concerning various Village matters; the legality of Village Administrator Milanesi signing Village checks without proper authority; and the Board's transfer and expenditure of funds without following proper voting procedure.  *Id.* ¶ 66.  Plaintiff alleges that she and Dressing also discussed these matters at a subsequent meeting with other officials of the Comptroller's Office in Rochester.  *Id.* ¶ 67.

Plaintiff also spoke out at a February 2, 2001 meeting of the Village's Public Safety Committee.  She alleges that although the usual practice was to have a clerk take minutes at such meetings, Board members Louis Lorenzetti and Carson Lankford declared that there was no need for anyone to take minutes.  Plaintiff objected that the meeting was subject to New York's Open Meetings Law, but Lorenzetti and Lankford repeated that plaintiff was not to take any minutes, although they did allow her to remain in the room.  *Id.* ¶¶ 68-73.

Plaintiff, however, had a tape recorder with her, which she used to record what was said during the meeting.  She later used the tape to compile minutes of the meeting, which she entered

into the official minutes book.  Later, though, plaintiff discovered that the minutes of the February 2 meeting had been removed from the minutes book.  *Id.* ¶¶ 74-77.

This matter eventually became the subject of an Article 78 petition after a Village resident asked to see the minutes and was told that they did not exist.  Plaintiff submitted an affidavit in connection with that proceeding, in which she described allegedly improper and illegal acts by the mayor and certain Board members.  *Id.* ¶¶ 78-80.  Plaintiff alleges that an attorney for the Village subsequently called plaintiff's husband (who was also employed by the Village as a planner, and who had also submitted an affidavit in connection with the Article 78 proceeding) and told him that he and plaintiff should not have signed those affidavits.  *Id.* ¶ 87.[8]

Plaintiff further alleges that on February 16, 2001, she submitted a memo to the Village police chief and Dressing regarding her concerns about Milanesi's actions and "requesting their assistance with ensuring her safety on the job."  *Id.* ¶ 81.  On March 13, 2001, she submitted another memo to Milanesi and then-interim clerk Monica Kuney concerning plaintiff's continued inability to access minute books.  *Id.* ¶ 82.

Plaintiff alleges that in January 2002, the Seneca County sheriff's department and district attorney began an investigation into alleged misconduct by the Village mayor and the Board.  In connection with that investigation, plaintiff was interviewed three times by an investigator with the sheriff's office.  *Id.* ¶¶ 90-91.

---

[8]Plaintiff testified that the Article 78 petition was eventually dismissed.  Dkt. #29-6 at 34.

Plaintiff also alleges that she spoke at meetings of a group calling itself Concerned

Citizens for Good Government, a local organization of Seneca Falls residents who were unhappy

with the Village administration.  *See* Plaintiff's Mem. of Law (Dkt. #29-14) at 17.[9]  Defendant

Constantino, who was mayor during the events in question, testified that he was aware of both

the group's existence and plaintiff's membership in it, although there is no direct evidence in the

record that Constantino was aware of any speech by plaintiff in connection with her participation

in the group.  Dkt. #29-8 at 6-7.


**C. Whether Plaintiff's Speech Was Protected**

Relying on *Garcetti*, defendants contend that none of the speech recited above was

constitutionally protected because it was made pursuant to plaintiff's job duties.  In response,

plaintiff asserts that courts in a number of post-*Garcetti* cases have found speech by public

employees to be protected as long as it was not actually *required* by their job duties.  She

contends that the speech at issue here was not required by her job, but was made at her own

initiative, and hence was protected.

After reviewing the record, I find that most of plaintiff's speech at issue here involved

matters of public concern.  I also find that some, but not all, of that speech was made by plaintiff

as a citizen rather than as a public employee.  In addition, I find that defendants have failed to

carry their burden of showing that the Village's interest in avoiding any disruption that was

---

[9]This allegation does not appear to be asserted in the complaint, but appears in the
deposition testimony of plaintiff's husband, Francis Caraccilo.  *See* Dkt. #29-7 at 83.

caused, or likely to be caused, by plaintiff's protected speech, outweighed her interest in speaking

out about matters of public concern.  Finally, I conclude that there are disputed issues of fact

concerning whether defendants' decision not to continue plaintiff's employment was motivated

by retaliation, and whether defendants would have taken the same action regardless of whether

plaintiff engaged in the protected conduct at issue.

Defendants do not appear to argue that the speech at issue in this case did not relate to

matters of public concern, and I find that it did.  In general, plaintiff spoke out about acts taken

by defendants that she believed exceeded their authority under state and Village law, and which

violated state laws concerning matters involving open meetings and public access to government

records.  Such matters are unquestionably of public concern.[10]  *See, e.g.*, *Lindsey v. City of*

*Orrick*, 491 F.3d 892, 899 (8th Cir. 2007) (city public works director's speech "criticizing the

Council's practices surrounding the passage of ordinances and its apparent lack of sunshine law

compliance [was] clearly on a matter of public concern"); *Casey v. West Las Vegas Indep. School*

*Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007) ("As we have held many times, speech reporting the

illicit or improper activities of a government entity or its agents is obviously a matter of great

---

[10]Some of plaintiff's speech related strictly to her job, such as her access to the Village's
post office box, that did not implicate matters of public concern.  *See Brammer-Hoelter v. Twin
Peaks Charter Academy*, 492 F.3d 1192, 1205 (10th Cir. 2007) ("speech that simply airs
'grievances of a purely personal nature' typically does not involve matters of public concern")
(citing *Lighton v. University of Utah*, 209 F.3d 1213, 1225 (10th Cir. 2000)); *Albert v. City of
Hartford*, 529 F.Supp.2d 311, 332 (D.Conn. 2007) ("while certain issues may touch upon matters
of public concern, the issue is whether the speech may be 'fairly considered' as relating to such
issues") (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  Most of the speech at issue in this
case, however, related to the openness of Village government proceedings, which was a matter of
public concern.

public import") (footnote omitted); *Harman v. City of New York*, 140 F.3d 111, 118 (2d Cir.

1998) ("discussion regarding current government policies and activities is perhaps the

paradigmatic matter of public concern"); *Allen v. Kline*, 507 F.Supp.2d 1150, 1168 (D.Kan.

2007) ("speech which seeks to expose improper government operations or questions the integrity

of governmental officials clearly concerns vital public interests"); *Rush v. Perryman*, No.

1:07CV00001, 2007 WL 2091745, at *4 (E.D.Ark. July 17, 2007) ("the allegation that Rush

informed the news media about potential violations of state open meetings law is sufficient to

demonstrate that he spoke out, as a citizen, on a matter of public concern").  The fact that some

of this speech may also have related to plaintiff's job duties does not mean otherwise.  *See Hulen

v. Yates*, 322 F.3d 1229, 1238 (10th Cir. 2003) ("speech which touches on matters of public

concern does not lose protection merely because some personal concerns are included") (citing

*Connick v. Myers*, 461 U.S. 138, 149 (1983)).

        I also find, however, that much of plaintiff's speech giving rise to her First Amendment

claim was made by her pursuant to her job duties, rather than "as a citizen."  Such speech is not

constitutionally protected.

        Under *Garcetti*, when a public employee speaks about a matter of public concern, she

does so either "'as a citizen' or as part of her public job."  *Mills v. City of Evansville, Indiana*,

452 F.3d 646, 647 (7th Cir. 2006) (citing *Garcetti*) (Easterbrook, J.).  Although there is no simple

checklist or formula by which to determine whether the employee was speaking as a private

citizen or as a public employee, in general "the cases 'distinguish between speech that is the kind

of activity engaged in by citizens who do not work for the government and activities undertaken in the course of performing one's job.'" *Davis*, 518 F.3d at 312-13 (quoting *Williams v. Dallas Indep. School Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (additional internal quotes omitted).

In *Garcetti* itself, the Court held that the employee's writing of a particular memo was not protected because writing such memos was "part of what he ... was employed to do." 547 U.S. at 421. Post-*Garcetti* cases have also focused on whether the employee's speech was made as part of the tasks that the employee was expected to perform as a part of her job. *See, e.g., Green v. Board of County Commissioners*, 472 F.3d 794, 800-01 (10th Cir. 2007) ("even if not explicitly required as part of her day-to-day job responsibilities, [plaintiff's] activities stemmed from and were the type of activities that she was paid to do," and hence were not protected under *Garcetti*); *Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007) (police officer's subpoenaed civil deposition testimony "was unquestionably not ... part of what he was employed to do," and thus was protected, even though officer testified about speech that was made pursuant to his official duties), *cert. denied*, ___ U.S. ___, 128 S.Ct. 905 (2008).

In addition, the reported cases "are consistent in holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis*, 518 F.3d at 313 (citing cases); *see, e.g., Thompson v. District of Columbia*, 530 F.3d 914, 917 (D.C. Cir. 2008) ("Ordinarily, employees who make recommendations to their supervisors on subjects directly related to their jobs are carrying out their official duties and thus receive no First Amendment

- 33 -

protection").  That does not mean, however, that the inverse is always true, *i.e.*, that if the employee raises concerns outside the workplace chain of command, then the speech *is* protected. *See Omokehinde v. Detroit Bd. of Educ.*, ___ F.Supp.2d __, 2008 WL 2618732, at *8 (E.D.Mich. 2008) ("if internal communications do not invariably lie **outside** the protective scope of the First Amendment, it surely follows that external communications are not automatically **entitled** to such protection"); *see also Andrew v. Clark*, 472 F.Supp.2d 659, 662 n. 4 (D.Md. 2007) (plaintiff's "speech 'pursuant to her official duties' did not lose its character as such simply because she disseminated it beyond official workplace channels") (citing *Casey*, 473 F.3d at 1334).

Here, most of plaintiff's speech was directed at the defendants, who were members of the Village government, concerning matters affecting or related to the scope of plaintiff's job duties. Such communications were made by plaintiff as a public employee, not as a private citizen.

For example, plaintiff's statements to Board members Lorenzetti and Lankford at the February 2, 2001 Public Safety Committee meeting, in which plaintiff stated her belief that the Open Meetings Law required that minutes be taken, were made by plaintiff not simply as a concerned citizen, but as a Village employee who believed that it was her duty to take minutes of the meeting.  The complaint itself indicates that plaintiff believed that it was improper not to take minutes because "[i]t was standard practice to have a Clerk present to take minutes at these meetings."  Complaint § 69.  Plaintiff's act of tape recording the meeting and then preparing minutes from that recording and entering them in the minutes book further supports the

conclusion that she spoke in her role as a public employee, as does her deposition testimony that

she "believe[d] that the New York State Public Officers Law ... states that minutes of committees

must be taken if it's an official committee of the village–of a municipal body, of an agency."

Dkt. #29-6 at 29.  Many of plaintiff's other statements concerning the taking of minutes,

compliance with the Open Meetings Law, and similar matters were in the same vein.

The affidavit that plaintiff signed in connection with a citizen's Article 78 proceeding,

however, was not made pursuant to plaintiff's job duties, and is subject to First Amendment

protection.  Although the affidavit itself does not appear to be in the record in this action,

plaintiff testified that in it she "provided information on access to records, Freedom of

Information Law requests, [and] the removal of minutes from the minute book ... ."  Dkt. 29-6 at

34.  There is no evidence, nor do defendants appear to assert, that plaintiff's job duties required

her to sign that affidavit.

Courts have recognized that in general, the giving of testimony, particularly if it is not

specifically required by a public employee's job, is entitled to First Amendment protection.  For

example, in *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008), the Court of Appeals for

the Third Circuit held that a police officer's testimony for the prosecution at the criminal trial of

a fellow officer "constituted citizen speech" that was protected by the First Amendment, even

though the speech "appear[ed] to have stemmed from [the plaintiff's] official duties ... ."  *Id.* at

231.  In so ruling, the court stated that "[i]t is axiomatic that '[e]very citizen ... owes to his

society the duty of giving testimony to aid in the enforcement of the law,'" *id.* at 228 (quoting

*Piemonte v. United States*, 367 U.S. 556, 559 n. 2 (1961)), and that "[t]he duty to testify has long

been recognized as a basic obligation that every citizen owes his Government." *Id.* at 231

(quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974)).  The court added, "That an

employee's official responsibilities provided the initial impetus to appear in court is immaterial

to his/her independent obligation as a citizen to testify truthfully." *Id.*

Similarly, in *Morales v. Jones*, 494 F.3d 590 (7th Cir. 2007), the Court of Appeals for the

Seventh Circuit held that "[b]eing deposed in a civil suit pursuant to a subpoena was

unquestionably not one of [the plaintiff police officer's] job duties because it was not part of

what he was employed to do." *Id.* at 598.  The court further held that the fact that the plaintiff

"testified about speech he made pursuant to his official duties [did not] render[] his deposition

unprotected." *Id.  See also Fairley v. Fermaint*, 482 F.3d 897, 902 (7th Cir. 2006) (testimony that

plaintiff jail guards gave in inmates' suits against county was protected, since "[a]ssistance to

prisoners and their lawyers in litigation is not part of a guard's official duties"); *United States v.

Awadallah*, 349 F.3d 42, 59 (2d Cir. 2003) ("[I]t is clearly recognized that the giving of

testimony and the attendance upon court ... in order to testify are public duties which every

person within the jurisdiction of the Government is bound to perform upon being properly

summoned") (quoting *Blair v. United States*, 250 U.S. 273, 281 (1919)), *cert. denied*, 543 U.S.

1056 (2005); *cf. Morris v. Crow*, 142 F.3d 1379, 1382 (11th Cir. 1998) (sheriff's deputy's

deposition testimony given in compliance with subpoena in third party's civil suit regarding

automobile accident involving a fellow officer was not constitutionally protected, because it did not relate to matter of public concern) (per curiam).

As stated, plaintiff also alleges that she spoke to various New York State officials regarding a number of matters concerning alleged improprieties in the Village government. Although the ultimate issue of whether plaintiff engaged in that speech as a citizen or as a public employee is for the Court to decide as a matter of law, I find that the record before me is insufficiently clear with respect to the content of, and the circumstances surrounding that speech to permit the Court to determine that issue at this time. *See Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) (expressing no view on whether plaintiff's statements were made pursuant to his official duties as a police officer, since no factual record had been developed on that issue), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Caruso*, 478 F.Supp.2d at 384 (stating that presence of factual issues precluded court from determining whether employee spoke pursuant to his official duties, and that "[s]uch conclusions must await the trial of this matter"); *Barclay v. Michalsky*, 451 F.Supp.2d 386, 395-96 (D.Conn. 2006) (material issues of fact existed as to whether plaintiff's complaints were made in the context of her job responsibilities).

In that regard, I note that the fact that plaintiff's speech to these officials may have *related* in some way to her job is not dispositive of whether it was made *pursuant* to her job duties or that it was unprotected. *See Garcetti*, 547 U.S. at 421 ("The First Amendment protects some expressions related to the speaker's job"); *Pickering*, 391 U.S. at 572 (public school teacher's

statements in letter to local newspaper criticizing board of education's funding policies were protected under First Amendment, since "[t]eachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent"); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1204 (10th Cir. 2007) ("Nor is all speech about the subject matter of an employee's work necessarily made pursuant to the employee's official duties"); *McGuire v. Warren*, 490 F.Supp.2d 331, 340-41 (S.D.N.Y. 2007) ("The fact that [plaintiff] was speaking on the general subject matter of her employment is inconsequential under the present circumstances"); *Burke v. Nittman*, No. 05-cv-01766, 2007 WL 691206, at *4 (D.Colo. Mar. 2, 2007) ("The fact that the speech at issue ... is related to the employee's job is not dispositive, and in some circumstances such speech is still considered public speech and may receive protection").

Viewing the record in the light most favorable to plaintiff, the nonmoving party, I conclude that some of this speech, which was made to individuals outside of plaintiff's regular chain of command, could have been made by plaintiff outside the context of her official duties. *See Brammer-Hoelter*, 492 F.3d at 1204 ("viewing the evidence in the light most favorable to them, Plaintiffs' speech regarding some of the matters was not made pursuant to their official duties"); *Casey*, 473 F.3d at 1332-33 (plaintiff's statements to state attorney general about school board's failure to comply with state open meetings act "fell sufficiently outside the scope of her office to survive even the force of the Supreme Court's decision in *Garcetti*") (footnote omitted); *see also Davis*, 518 F.3d at 313 ("If ... a public employee takes his job concerns to persons

outside the work place in addition to raising them up the chain of command at his workplace,

then those external communications are ordinarily not made as an employee, but as a citizen").[11]

Plaintiff's speech in connection with her participation in the "Concerned Citizens for

Good Government" group is also protected.  Plaintiff's job obviously did not require her to

belong to that group, to participate in its activities, or to attend or speak at its meetings.

Although defendants contend that there is no evidence that they were aware of any particular

speech by plaintiff in connection with that group, Constantino testified that he "kept hearing"

from various sources that plaintiff and others "ha[d] a meeting all the time," and that he was

aware that "some of those people [in that group took] exception to some of the actions being

taken by [Constantino] as Mayor[.]"  Dkt. #29-8 at 6-7.  I believe that this evidence is enough to

give rise to an issue of fact concerning whether Constantino knew that plaintiff had engaged in

protected activity in connection with this group.  *See Caruso*, 478 F.Supp.2d at 384 (stating that

plaintiff schoolteacher had "raise[d] factual issues surrounding the knowledge of administrators

---

[11]I recognize that the mere fact that a public employee voices her concerns about an employment-related matter publicly, or outside the chain of command, will not itself transform an otherwise private matter into a matter of public concern.  *See, e.g.*, *Caine v. Hardy*, 943 F.2d 1406, 1416 (5th Cir. 1991) ("context alone cannot transform an inherently self-interested opinion into one that implicates public issues.  Had Dr. Caine proclaimed his opposition to Dr. Hardy's exclusive contract proposal from the steps of the Mississippi capitol, the characterization of this speech [as relating to purely private concerns] would not differ"), *cert. denied*, 503 U.S. 936 (1992); *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir. 1989) (mere fact that newspaper contacted employee and published her allegations did not necessarily mean that employee's speech involved a matter of public concern), *cert. denied*, 494 U.S. 1029 (1990).  As stated, though, this aspect of plaintiff's claim involves disputed issues of fact, which the Court cannot resolve on defendants' motion for summary judgment.

of her speech and political activities outside of school," and that "[s]uch conclusions must await the trial of this matter").

## D. *Pickering* Balancing

The next issue is whether, to the extent that plaintiff spoke as a citizen about matters of public concern, "the employee's interest in free speech is outweighed by the employer's interest in avoiding disruption." *Reuland*, 460 F.3d at 415.  *See Garcetti*, 547 U.S. at 418.  Defendants contend that plaintiff's "insubordinate and adversarial manner" was incompatible with the orderly administration of the Village government, and justified her termination, even if some of the speech she engaged in was protected.  Defendants' Mem. of Law (Dkt. #26-12) at 21.

"Under the *Pickering* test, a government employer may fire an employee for speaking on a matter of public concern if '(1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech.'" *Locurto*, 264 F.3d at 166 (quoting *Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir. 1995), *cert. denied*, 516 U.S. 862 (1995)).  It is defendants' burden to establish that the plaintiff's speech or conduct was disruptive, to a degree that it did or was likely to ""impair[] discipline by superiors or harmony among co-workers, ha[ve] a detrimental impact on close working relationships ... or impede[] the performance of the speaker's duties or interfere[] with the regular operation of the enterprise." *Melzer*, 336 F.3d at 197 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)).

*See also Locurto v. Giuliani*, 447 F.3d 159, 172 (2d Cir. 2006) ("Once an employee demonstrates that her speech was the motivating factor behind an adverse employment action, the burden shifts to the Government 'to make a substantial showing of likely interference'") (quoting *Jeffries*, 52 F.3d at 13); *Sexton v. Martin*, 210 F.3d 905, 912 (8th Cir. 2000) ("Mere allegations of disruption are insufficient to put the *Pickering* balance at issue").

"[T]here is no easy formula for 'weighing' an employee's First Amendment speech against an employer's interest in an efficient and disciplined work environment." *Brammer-Hoelter*, 492 F.3d at 1207 (quoting *Casey*, 473 F.3d at 1333). Among the factors that the court may consider are whether the plaintiff's speech: impaired discipline by superiors or harmony among her coworkers; had a detrimental impact on close working relationships for which personal loyalty and confidence were necessary; impeded the performance of the plaintiff's own duties; or interfered with the regular operation of the relevant governmental unit. *Brammer-Hoelter*, 492 F.3d at 1207. The court may also consider "the extent of the disruption caused by the employee's speech on workplace discipline, harmony among co-workers, working relationships, and the employee's job performance, as well as the responsibilities of the employee within the agency and whether the speech is made publicly or privately." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 139 (2d Cir. 1999) (internal quotes omitted).

In undertaking this analysis, it must also be borne in mind that "the closer the employee's speech reflects on matters of public concern, the greater must be the employer's showing that the speech is likely to be disruptive before it may be punished." *Jeffries*, 52 F.3d at 13; *accord Belk*

*v. City of Eldon*, 228 F.3d 872, 881 (8th Cir. 2000), *cert. denied*, 532 U.S. 1008 (2001); *Lewis*,

165 F.3d at 162.  *See also Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) ("This analysis in

reality is a sliding scale or spectrum upon which '"public concern" is weighed against

disruption'") (quoting *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992)).  As noted earlier,

"[a]ccusations against high-ranking government officials of improper ... behavior 'implicate[]

particularly strong First Amendment interests.'"  *Dangler*, 193 F.3d at 140.

I find that defendants have failed to meet their burden on this issue.  They have simply

asserted, in conclusory fashion, that plaintiff's conduct was insubordinate.  Constantino did

testify about certain incidents involving plaintiff during her employment, *see* Dkt. #26 Ex. F at

49-55, but that testimony alone does not establish as a matter of law that plaintiff's conduct or

speech was so disruptive as to justify her termination, particularly since her speech at issue here

did relate directly to matters of public concern.[12]

---

[12]I recognize that plaintiff was never formally "terminated" in the sense of being fired.
Her term as deputy clerk simply expired, and she was neither reappointed to that position nor
returned to her position as assistant planner.  All that is required for purposes of her First
Amendment claim, however, is that plaintiff show that she was subjected to an adverse
employment action.  I conclude that defendants' refusal to return plaintiff to her job as assistant
planner, could constitute an adverse action, and, as explained above, I find that there are issues of
fact in that regard.  I also conclude that the failure to reappoint plaintiff as deputy clerk could
constitute an adverse action, notwithstanding the fact that plaintiff had no due process rights with
respect to that job.  *See Jackson v. Jimino*, 506 F.Supp.2d 105, 117 n. 6 (N.D.N.Y. 2007) ("the
failure to reappoint based on the basis of protected speech has been established as an adverse
employment action, even though Jackson may not have been entitled to that appointment");
*McFarlane v. Chao*, No. 04CV4871, 2007 WL 1017604, at *23 (S.D.N.Y. Mar. 30, 2007) ("The
weight of authority supports the proposition that failure to renew an employee's contract may
constitute an adverse employment action") (collecting cases).

In addition, defendants have submitted no evidence that the decision to terminate plaintiff's employment was in fact motivated by a desire to avoid any disruption caused by her speech, rather than in retaliation for the speech itself. *See McFall v. Bednar*, 407 F.3d 1081, 1090 (10th Cir. 2005) (*Pickering* balancing test weighed in favor of plaintiff where governmental employer conceded that plaintiff's speech did not cause any actual disruption); *Melzer*, 336 F.3d at 197 ("a showing of probable future disruption may satisfy the balancing test, so long as such a prediction is reasonable"); *Sheppard*, 94 F.3d at 827 (even where disruption is shown, employer may fire employee only because of the *disruption*, not because of the *speech*).

"[A]lthough the *Pickering* test presents a question of law, resolution of a First Amendment retaliation claim on a motion for summary judgment may not be possible if the plaintiff introduces sufficient evidence to create a genuine issue of material fact on the question of defendant's improper intent, which is a question of fact." *Locurto v. Safir*, 264 F.3d at 167. *See*, *e.g.*, *Reuland*, 460 F.3d at 419 ("The jury should have resolved whether Hynes was in fact motivated by a desire to avoid disruption, rather than retaliation, and whether his concern about disruption was reasonable"); *Johnson v. Ganim*, 342 F.3d 105, 115 (2d Cir. 2003) ("factual disputes pertaining to the potential for disruption and defendants' motivations in suspending and terminating plaintiff preclude summary judgment"); *Gorman-Bakos*, 252 F.3d at 557-58 (factual disputes underlying *Pickering* balance must be submitted to the jury). In the case at bar, I find that there are genuine issues of material fact concerning whether defendants were motivated by a desire to avoid disruption in the workplace rather than by retaliation for her protected speech.

**E. "Substantial or Motivating Factor" and the *Mt. Healthy* Defense**

Plaintiff must also establish that her protected speech was a substantial or motivating factor in defendants' decision not to continue her employment with the Village.  For the reasons given, I conclude that there are genuine issues of fact concerning this issue, which typically presents a factual issue for the jury in any event.  *Baldassare*, 250 F.3d at 195.

Even if plaintiff presents evidence that her protected speech was a motivating factor in the challenged employment decision, defendants can prevail on this claim if they can establish that they would have taken the same action regardless of plaintiff's protected speech.  *Mt. Healthy*, 429 U.S. at 287; *Reuland*, 460 F.3d at 415.  Although defendants contend that they have met this burden, I believe that this presents an issue of fact as well.

Defendants contend that they *could* lawfully have terminated plaintiff because of her disruptive behavior, but the only evidence that they have submitted to show that this was in fact the reason for their decision not to continue plaintiff's employment is the deposition testimony of Constantino.  The truthfulness and accuracy of that testimony is a matter for the finder of fact to determine at trial, not for the Court on a motion for summary judgment.  *See Baldassare*, 250 F.3d at 195 (whether employer would have taken same action in absence of protected speech is an issue of fact); *Farmer v. Tennessee Dep't of Safety*, No. 05-CV-84, 2008 WL 820017, at *12 (E.D.Tenn. Mar. 25, 2008) ("To find that the defendants would have taken the same action absent the protected conduct would require the court to determine the motivation and credibility of the actors involved, conduct which is beyond the court's role at summary judgment").

### III. Liability of Individual Board Members and Qualified Immunity

Defendants also contend that the claims against them in their individual capacity must be dismissed because they were not personally involved in the termination of plaintiff's employment, and that all the defendants are entitled to qualified immunity from liability for their actions.

To some extent, this argument is based on defendants' assertion that plaintiff was never "terminated," but that her term of employment simply expired, and that she had no right to continued employment after her term as deputy clerk ended. For the reasons already stated, defendants are not entitled to summary judgment on that issue.

Defendants also contend that even if plaintiff's employment was, in some sense, "terminated," the individual Board members cannot be held liable because it was the mayor's sole decision not to reappoint plaintiff. It is undisputed, however, that two of the defendant Board members, Lorenzetti and Barbay, voted to approve Mayor Constantino's nomination of another person to replace plaintiff as deputy clerk. In any event, I believe that there is enough evidence here of concerted action by defendants that plaintiff should be allowed to proceed with her claims against all the individual defendants. If the proof at trial fails to show personal involvement by one or more individual defendants, then the claims against those defendants will be subject to dismissal at that time.

Defendants also contend that they are entitled to summary judgment on the ground of qualified immunity. That motion is denied as well.

With respect to plaintiff's due process claim, "it has long been settled that due process generally requires a state to afford its citizens 'some kind of hearing' prior to depriving them" of a protected property or liberty interest." *Velez v. Levy*, 401 F.3d 75, 101 (2d Cir. 2005). Viewing the evidence in the light most favorable to plaintiff, defendants understood that plaintiff retained some rights in the planning assistant position when she accepted the deputy clerk job, and "[i]t follows that a reasonable official in [defendants'] position should have been aware that the failure to give an adequate pre-termination hearing violated the Fourteenth Amendment." *Id.*

With respect to the First Amendment claim, it is equally well established that "governmental entities may not inflict an adverse employment decision upon an employee in retaliation for the employee's exercise of his First Amendment rights." *Skehan*, 465 F.3d at 107 (adding that this "right was clearly established by 2002 and 2003, the period of time where Flynn allegedly retaliated against the plaintiffs," and that "[i]n our view, no reasonable officer could hold a contrary belief"); *Velez*, 401 F.3d at 102 ("if it is true, as asserted by Velez, that Levy acted deliberately to bring about Velez's removal in retaliation for her political views, he cannot avail himself of qualified immunity") (footnote omitted). Defendants are therefore not entitled to qualified immunity on this claim either.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #26) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 16, 2008.

- 46 -